AO 91 (Rev. 02/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 1:13- mj.00181-CL |
| Alan Leroy McVay ) | |
| ) | |
| Defendant ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  11/13/2013  in the county of  Jackson  in the _____ District of  Oregon , the defendant violated  Title 18  U. S. C. § 844(i) , an offense described as follows:

Malicious Destruction of Property by Explosion

This criminal complaint is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature
David A. Carroll, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/25/13

City and state: Medford, Oregon

Mark D. Clarke, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

STATE OF OREGON          )
                         ) ss.    AFFIDAVIT IN SUPPORT OF
County of Jackson        )        CRIMINAL COMPLAINT

## INTRODUCTION

I, David A. Carroll, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for approximately 26 years. I am assigned to the Medford Resident Agency of the Portland Division of the FBI and have experience in a variety of investigations to include, but not limited to, counterterrorism, drug trafficking, public corruption, bank robberies and white collar crime.

2. My experience as a Special Agent includes, but is not limited to, interviewing witnesses, conducting surveillance, writing affidavits for and executing search warrants, and working with undercover agents and informants. I have received training in and have experience in the investigation of a variety of violations of federal laws, including the offenses listed below. I have experience in the preparation and execution of search warrants. I have sought and received criminal complaints in the past and I am familiar with the

1

elements necessary to make arrests based on criminal complaints. I have worked and conferred with various experienced law enforcement officers who were trained in a variety of investigations, and I have drawn from their knowledge and expertise as well.

3. This case is being investigated jointly by the FBI, the Bureau of Alcohol, Tobacco and Firearms (ATF), the Medford Police Department (MPD), and the Oregon State Police (OSP). I have personally participated in the investigation of the offenses described below and make this Affidavit based on my personal participation in the investigation, knowledge obtained from other individuals during our participation in this investigation, including other law enforcement officers, interviews of witnesses, our review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein and information gained through our training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a criminal complaint, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## PURPOSE OF AFFIDAVIT

4. This affidavit sets out circumstances and information that gives me probable cause to believe that Alan Leroy McVay

2

...

has committed an offense enumerated in Title 18, U.S.C., Section 844(i), Malicious Destruction of Property by Explosion. Section 844(i) provides that whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years.

### EXPLOSION AT DISTRICT ATTORNEY'S OFFICE

5. On November 13, 2013, at approximately 4:30 a.m., an explosive device was detonated at the Jackson County District Attorney's Office (JCDA) at 715 West 10th Street, Medford, Oregon. The Jackson County District Attorney's office prosecutes state criminal offenses committed in Jackson County, Oregon. I know that as part of the District Attorney's prosecutorial function, it is involved directly in the prosecution of persons illegally transporting controlled substances into the state of Oregon primarily from the state of California on I-5 and of persons committing robbery of commercial businesses that are engaged in interstate commerce such as motels, gas stations and convenience stores; likewise, the District Attorney is involved directly in the extradition of persons from other states who have committed state offenses in Jackson County and who flee the state to avoid criminal

prosecution or are otherwise apprehended in another state.

6. The explosion damaged the JCDA. Exterior windows were broken and debris was blown both in and outside of the building. When police and fire fighting personnel first arrived on the scene following the explosion, the explosive device was on fire just outside one of the broken windows on the building. On scene analysis conducted by FBI, ATF and OSP Bomb Technicians indicated the destructive device appears to have been comprised of a "JT" $CO_2$ cylinder filled with an explosive powder that was taped to the side of a liquid petroleum/propane tank using a specific type of black tape. The device was detonated using cannon or hobby fuse. The items of evidence collected at the scene have been submitted to the FBI Lab in Quantico, Virginia.

### LAW ENFORCEMENT RECEIVE INVESTIGATIVE LEAD

7. On November 15, 2013, Jackson County law enforcement received a tip that Alan Leroy McVay was believed to have been the person who may have placed the bomb at the JCDA. Following up on that information, it was learned that McVay was currently being prosecuted by the Jackson County District Attorney's office for burglary and that he had been scheduled for a court appearance on November 14, 2013 to plead guilty and receive a 36 month prison sentence. McVay's co-defendant from the same burglary/possession of firearms investigation, who was also prosecuted by the district attorney, had already been sentenced

4

and was serving a prison term.

8. The FBI obtained the recordings of telephone calls of McVay's co-defendant from the state correctional institution where the co-defendant was imprisoned. The recordings contained numerous conversations between McVay and his co-defendant and the records disclosed the telephone number McVay was using during those conversations, xxx-xxx-7057. The following are relevant portions of those conversations:

> On November 9, 2013, McVay said, "I want to go off on some shit, I tell you what, I got some things to do it with" and later commenting that "it'll be fun. You'll hear about it."
> On November 10th, McVay said that he was going to handle it the way "Barry" handles things. McVay also stated, "Anyway, it could probably get rid of all kinds of paper, from the ground up."
> On November 11th, two days before the bombing, McVay made a statement that "maybe a miracle will happen and we'll have some crazy earthquake shit," and later commented that "there's something I can do. They just pissed me off to the point. You know what the point is. When you reach the point." Later McVay continued by stating, "it'll be fun, it'll be fun" and "you'll hear about it someday."
> On November 13th, the day of the bombing, McVay said, "somebody blew up the District Attorney's office," and that

5

it was "funny shit." McVay went on to say that his scheduled appearance for the following day was postponed.

### TELEPHONE ANALYSIS

9. Search warrants were obtained for text message content for telephone number xxx-xxx-7057. I was informed by MPD Detective Jim Williams who served the warrants that based on a review of the data it was determined that McVay's telephone, xxx-xxx-7057, engaged in an exchange of texts with telephone number, xxx-xxx-6551 at approximately 5:00 am on November 13, 2013. These text messages would have been approximately one half hour after the detonation of the explosive device at JCDA.

10. Also, the cell sites transmitting the data associated with these text messages indicate McVay's telephone was physically located in the vicinity of West Medford, approximately one mile from JCDA. An inquiry of the MPD's record systems revealed xxx-xxx-6551 was connected with a person identified as having filed an August 2013 harassment complaint, and whose residential address was on Jeanette Ave, in west Medford, Oregon.

11. Further review of the content of the November 13th text messages obtained pursuant to the search warrants revealed the following:

> At 5:00 a.m. a text message from xxx-xxx-7057 (McVay) to xxx-xxx-6551 stated: "If cops ask I have ben here sick in

6

trick."

At 5:01 a.m. a reply text message from xxx-xxx-6551 to xxx-xxx-7057 (McVay) with "k." This was followed by another text message from xxx-xxx-6551 at 5:02 a.m., "You got anything to do w light show?"

At 5:03 a.m. xxx-xxx-7057 (McVay) responded, "No I kmnow who does." A reply text message from xxx-xxx-6551 immediately follows with "erase text messages."

Later the same day, at 5:07 p.m., a text message from xxx-xxx-6551 to xxx-xxx-7057 (McVay): "Watching news, Should have that $150.00 for you in a couple of hours. Text you as soon as I do. FBI ATF all of em are at the party. Propane tank didn't go off. Prints? Talk at you in a little bit."

### MCVAY INVOLVED IN DETONATING EXPLOSIVES PREVIOUSLY

12. Agents and detectives have received information directly from associates of McVay that he detonated explosives previously. I was informed by MPD Detective Justin Ivens of his interview with Jeremy Harvey who advised of detonating CO2 cartridges filled with explosives with McVay on two different days previous to the detonation of the explosive device at JCDA. Harvey described detonating several smaller CO2 cartridges with McVay on one occasion, followed by exploding a larger CO2 cartridge identical to the one used in the JCDA explosion on a subsequent occasion. On this second occasion, Harvey and McVay

7

discussed the possibility and the potential effects of attaching the larger size CO2 cartridge to a propane tank. However, this discussion did not lead to them attaching a larger size CO2 cartridge to a propane tank on that occasion. Harvey was unaware if McVay ever did so independently.

### ARREST AND INTERVIEW OF MCVAY

13. On November 19, 2013, it was determined that McVay was at a residence located in White City, Oregon and was placed under surveillance by law enforcement. On November 20th, McVay was arrested by MPD for the bombing of the JCDA. McVay was interviewed by law enforcement from MPD, FBI and ATF. The interview was video and audio recorded. McVay was advised of his Miranda Rights, acknowledged knowing his rights and waived those rights and provided a detailed statement of his involvement in the JCDA bombing.

14. During the interview, McVay admitted that he detonated the destructive device at the JCDA on November 13, 2013. McVay said he did it in an attempt to delay his state sentencing for the burglary he was charged with and prosecuted by the Jackson County District Attorney. McVay advised he obtained the items he used to configure the bomb from various places. The items included the propane tank, the JT CO2 cartridge, gunpowder, black tape and fuse. McVay had a tin flask containing powder and obtained additional gunpowder by breaking open bullets he

had collected over the years. He combined these powders and poured them into the CO2 cartridge to create the pipe bomb device to detonate the propane tank. He taped the pipe bomb to the propane tank with the black tape and used the fuse to ignite the pipe bomb device. McVay stated that he assembled the explosive device in his pickup truck outside the Jeanette Ave. residence before taking it to the JCDA office. McVay explained that he randomly chose the window to target, lit the fuse and swung the explosive device at the window. He observed that the blinds had prevented the device from completely entering the building and it hung up on the window sill. McVay immediately fled the scene, hearing the explosion when he was about a block away. McVay returned to the Jeanette Ave address and remained in the pickup outside the residence. McVay acknowledged sending the 5:00 a.m. text message in order to establish an alibi in case police made contact with him while he was in the pickup parked outside.

## SEARCHES CONDUCTED

15. During McVay's interview, agents requested consent to search various locations that he was associated with and were believed to possibly contain evidence related to the bombing of the JCDA. It included McVay's pickup and two travel trailers, among other places. McVay consented to the searches. The subsequent searches resulted in the seizure of black tape

9

consistent with what was recovered from the site of the explosion, canisters of explosive powder and/or gunpowder, pieces of fuse and gloves, among other things.

## CONCLUSION

16. Based on the foregoing, I believe there is probable cause to find that on November 13, 2013, Alan Leroy McVay violated 18 U.S.C., Section 844(i) (Malicious Destruction of Property by Explosion). Accordingly, I respectfully request that the Court issue a criminal complaint charging Alan Leroy McVay with this crime and issue a warrant for his arrest.

17. This affidavit, criminal complaint and requested arrest warrant were reviewed and approved by Assistant United States Attorney Byron Chatfield prior to being submitted to the court.

_____
David A. Carroll
Special Agent
Federal Bureau of Investigation
Medford, Oregon

Subscribed and sworn to before me this 25 day of November, 2013

_____
Mark D. Clarke
U.S. Magistrate Judge
Medford, Oregon